**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

James G. Mermigis, Esq.
**THE MERMIGIS LAW GROUP, P.C.**
85 Cold Spring Road, Suite 200
Syosset, New York  11791
516-353-0075
James@MermigisLaw.com

*Attorneys for Plaintiffs*

_____

STAND UP 236, LLC. d/b/a STAND UP NY,

                         Plaintiff,

- against -                                        **COMPLAINT**

                                 **Civ No.:**

Andrew M. Cuomo, in his official capacity
as Governor of New York,
                         Defendant.

_____

        Plaintiff STAND UP 236, LLC. d/b/a STAND UP NY ("Stand Up NY"), for its

Complaint against Defendant Andrew M. Cuomo, in his official capacity as Governor of New

York, alleges as follows:

**INTRODUCTION**

       1.       Plaintiff, one of the nation's leading comedy venue, brings this action to challenge

the arbitrary and unconstitutional decision by Governor Cuomo to close down all comedy venues

statewide while allowing comparable businesses, including movie theaters, Saturday Night Live,

Jimmy Fallon Show, jazz dinner theaters, weddings in catering halls and restaurants and bars

with "live music," to remain open. The comedy venue shutdown has resulted in the loss of

1

thousands of jobs for hard-working New Yorkers across the State, and threatens to jeopardize Plaintiff's market share and the long-term economic viability of Plaintiff's business, all without cause.

2.      Plaintiff, Stand Up NY, opened its doors in 1986 and has since become one of New York City's premiere comedy venues. Celebrated for its rich history, elegant interior and outstanding performers, Stand Up NY has created an exclusive comedy experience as it sets the standard for other comedy venues. From Jerry Seinfeld to Chris Rock, Pete Davidson and Amy Schumer, its stage continues to be a breeding ground for the brightest stars of today and tomorrow.

3.      Plaintiff has been ready to open and become a leader in COVID-19 safety since the early days of the pandemic. It is ready to implement daily temperature checks and to require all guests and employees to wear masks. As of today, Plaintiff is ready to open and safely operate with a modified venue layout, frequent cleanings of all surfaces throughout the day by dedicated staff, installation of multiple hand sanitizer stations, and other measures. It has repeatedly offered to comply with any reasonable public health guidelines that New York might prescribe.

4.      Yet Defendant has ordered comedy venues to remain closed while permitting movie theaters, casinos, Saturday Night Live, bowling alleys, billiards halls, gyms, jazz clubs, museums, catering halls for weddings, restaurants and bars with incidental music and other entertainment and recreation venues that pose similar or greater risks of COVID-19 transmission to reopen.

5.      The comedy venue shutdown is causing unnecessary financial hardship for Plaintiff and its employees every day. Due to the shutdown, it has been forced to furlough all but one of these employees.

6.      Plaintiff seeks declaratory and injunctive relief under 42 U.S.C. § 1983 to remedy Defendant's violations of the Free Speech Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. Plaintiff also seeks declaratory and injunctive relief to remedy Defendant's violations of Article I, Section 8, of the New York State Constitution and Article I, Section 11, of the New York State Constitution.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. 7. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## PARTIES

8.      Plaintiff Stand Up NY, is one of nation's leading comedy venues with its principal place of business in the borough of Manhattan, New York. Because of Defendant's executive orders, the Stand Up NY has been shut down since March 16, 2020 through the date of the filing of this Civil Action.

9.      Defendant Andrew M. Cuomo is the Governor of New York. He acted under color of state law at all relevant times. His official place of business is the State Capitol Building in Albany, New York. He is sued in his official capacity.

## PLAINTIFF'S COVID-19 SAFETY MEASURES

10.      Plaintiff is a comedy venue that allows patrons to sit and watch live comedy, while having the opportunity to share food and beverages with friends and family.

11.      During the COVID-19 pandemic, Plaintiff has been prepared to put the safety of its employees and guests first. By imposing stringent health protocols and making material

3

modifications to its floor plans and guidelines. Similar comedy venues are open and safely operating in most jurisdictions throughout the country. These jurisdictions include the neighboring states of Connecticut, Massachusetts, New Jersey, and Pennsylvania. They also include Alabama, Alaska, Arizona, Arkansas, Colorado, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Kansas, Kentucky, Maryland, Michigan, Minnesota, Nebraska, Nevada, New Hampshire, North Carolina, Ohio, Oklahoma, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, and Wisconsin.

12.     Plaintiff will implement daily temperature checks of employees and guests and will require all guests and employees to wear masks.

13.     Plaintiff will require masks for all guests and employees, and continue to screen all employees for symptoms at the start of every shift. Plaintiff's large venue space will naturally allow for greater social distancing, but to keep its employees and guests safe, Plaintiff has rearranged venue layouts, posted new safety signs, and shut down tables to ensure adequate distancing. Hand sanitizer is strategically placed throughout the venue to promote healthy practices, and all surfaces will be cleaned frequently throughout the day by dedicated staff. Plaintiff has installed air purifiers and merv-13 filters. Plaintiff will work cooperatively with the department of health to ensure that best practices are instituted and followed by its employees and patrons.

## NEW YORK'S DISCRIMINATORY SHUTDOWN ORDERS

14.     On March 7, 2020, Defendant promulgated Executive Order 202 declaring a state disaster emergency based on the outbreak of COVID-19. On March 16, 2020, Plaintiff was

ordered by Defendant's executive order 202.3 to shutdown its *small comedy venue* effective at

8pm on March 16, 2020, until further notice.

15.     As a result of Executive Order 202.3 (Attached as Exhibit A.), Plaintiff was

forced to close. Devastatingly, Stand Up NY remains closed to this day—nearly a year later.

16.     In contrast, on June 26, 2020, approximately three months after his initial

executive order, Defendant issued Executive Order 202.45, which permitted certain "[l]ow-risk

indoor arts and entertainment," including museums, aquariums, and art galleries, to reopen "in

eligible regions" if "operated in compliance with the guidance promulgated by the Department of

Health."

17.     Shortly thereafter, on July 6, 2020, Defendant issued Executive Order 202.48,

which provided that "the directives contained in Executive Order 202.3 that closed . . . movie

theaters, concerts, performances, churches, restaurants and bars," shall "remain in effect only

until such time as a future Executive Order opening them is issued."

18.     Almost two months after that, on August 20, 2020, Defendant issued Executive

Order 202.57, which permitted "bowling alleys to open as of August 17, 2020 [sic] subject to

adherence to Department of Health issued guidance." Order 202.57 also permitted any "gym,

fitness center or class, to operate subject to adherence to Department of Health issued

guidance . . . no earlier than August 24, 2020."

19.     On September 4, 2020, Defendant issued Executive Order 202.60. It permitted

"any facility authorized to conduct video lottery gaming or casino gaming . . . to open beginning

on or after September 9, 2020, subject to adherence to Department of Health guidance."

20.     On September 9, 2020, Defendant issued Executive Order 202.61. It permitted

Restaurants and Bars in New York City to resume "indoor dining" on September 30, 2020.

21.    And next, on October 20, 2020, Defendant issued Executive Order 202.70, which permitted "movie theaters" in certain areas "to open effective October 23, 2020 at 25% capacity with up to 50 people maximum per screen, subject to adherence to Department of Health guidance."

22.    On October 3, 2020, Saturday Night Live opened its 46th season with a live audience. In order to follow New York State guidelines, SNL treated a typical studio audience like its employees by paying them $150 each and "casting" them to be audience members. As a result, SNL can have weekly live audiences in its shows as long as they pay the audience.

23.    On January 29, 2021, Defendant announced that event venues in New York State will be able to host wedding receptions at 50% capacity, to a maximum of 150 people, as of March 15, 2021.

24.    On February 10, 2021, Defendant announced that large New York venues like Madison Square Garden and Barclay's Center can reopen beginning February 23, 2021.

25.    On February 22, 2021, Defendant announced that all movie theaters may reopen in New York City on March 5, 2021.

26.    On February 22, 2021, Defendant also announced that billiards halls can open on March 5, 2021.

27.    Defendant further announced that establishments that provide food and beverage and recreational activities including darts, racket games and axe throwing may open on March 5, 2021.

28.    Restaurants and bars in New York can have "live music" as long as the music is "incidental" to the dining experience and not the draw itself.

https://sla.ny.gov/phase3-guidelines-for-on-premises-licenses

29.     Defendant has never publicly explained how comedy venues are meaningfully different from SNL, movie theaters, axe throwing venues, casinos, churches, video lottery gaming facilities, bowling alleys, billiards halls, film houses, museums, aquariums, art galleries, gyms, and fitness centers in the context of COVID-19.

30.     Movie theaters, SNL, restaurants and bars, and wedding guests engage in similar activities to comedy venue guests. Guests often visit with groups of family or friends and they typically spend extended periods of time indoors. They are seated together in the venue and eat and drink together. Yet these venues are permitted to operate under safety protocols that are similar to what Plaintiff has proposed. For example, guests and employees are required to maintain appropriate distance and wear masks. Surfaces and equipment must be frequently cleaned, hand sanitizer must be made available throughout the venue, and hand hygiene must be encouraged. Employees must be screened daily for symptoms, and facilities must cooperate with the health department in tracing positive cases. Plaintiff has also proposed temperature checks at the door.

31.     The live audience at Saturday Night Live would be required to wear face masks throughout the building and they would get their temperature checked at arrival; anyone with a temperature check of 100.4 degrees or higher would be asked to leave. SNL is permitted to operate under safety protocols that are similar to what Plaintiff has proposed.

https://www.nytimes.com/2020/10/06/arts/television/snl-live-audience-paycheck.html

32.     Likewise, bowling alley patrons' activities do not meaningfully differ from the activities of comedy venue patrons. Like bowling alley patrons, comedy venue patrons often spend extended periods of time indoors. They often visit with groups of family or friends, and

they stay in their designated area. Yet bowling alleys are permitted to operate under safety

protocols that are similar to what Plaintiff has proposed. For example, guests and employees are

required to maintain appropriate distance and wear masks. Surfaces and equipment must be

frequently cleaned, hand sanitizer must be made available throughout the facility, and hand

hygiene must be encouraged. Employees must be screened daily for symptoms, and facilities

must cooperate with the health department in tracing positive cases. Plaintiff has proposed

temperature checks as well.

See Sports and Recreation Guidelines, available at https://on.ny.gov/3rlrbGL

See Interim Guidance for Sports and Recreation During the COVID-19 Public Health

Emergency, available at https://on.ny.gov/36yLFUb.

      33.      And casino and video lottery gaming guests likewise engage in similar activities

to comedy venue guests. They, too, typically spend extended periods of time indoors. They often

attend with groups of family or friends. They also remain in a designated area for a long period

of time and eat and drink. Yet casinos and video lottery gaming facilities are permitted to operate

under safety protocols that are similar to what Plaintiff has proposed. For example, guests and

employees are required to maintain appropriate distance and wear masks. Surfaces and

equipment must be frequently cleaned, hand sanitizer must be made available throughout the

facility, and hand hygiene must be encouraged. Employees must be screened daily for symptoms,

and facilities must cooperate with the health department in tracing positive cases. Plaintiff has

also proposed temperature checks of all patrons.

See Gaming Facility Guidelines for Employers and Employees, available at https://on.ny.gov/

3pESVpc;

8

Interim Guidance for Gaming Facilities During the COVID-19 Public Health Emergency, available at https://on.ny.gov/3oJZMMX.

34.     Similarly, movie theater guests engage in activities equally likely to present concerns about the transmission of COVID-19. Movie theater patrons spend extended periods of time indoors for entertainment purposes, with equivalent opportunities to purchase food and beverages. Movie theater patrons often attend with groups of family or friends. Yet movie theaters are permitted to operate under safety protocols that are similar to what Plaintiff has proposed. For example, guests and employees are required to maintain appropriate distance and wear masks. Surfaces and equipment must be frequently cleaned, hand sanitizer must be made available throughout the facility, and hand hygiene must be encouraged. Employees must be screened daily for symptoms, and facilities must cooperate with the health department in tracing positive cases. Plaintiff has also proposed temperature checks of all patrons.

See Movie Theater Guidelines for Employers and Employees, available at https://on.ny.gov/2NVJ0gV;

Interim Guidance for Movie Theaters During the COVID-19 Public Health Emergency, available at https://on.ny.gov/2YBuahO.

35.     Restaurants and Bars guests engage in activities equally likely to present concerns about the transmission of covid-19. Restaurant and Bar patrons spend extended period of time indoors in groups listening to live music or jazz with the opportunity to purchase food and beverages. Restaurant and bar patrons often attend with groups of family or friends. Yet restaurants and bars are permitted to operate under safety protocols that are similar to what Plaintiff has proposed including temperature checks and contact tracing at the door.

9

36.     Thus, over the last seven months, Defendant has allowed each of these similarly situated businesses to reopen with appropriate safety protocols in place, while comedy venues inexplicably remain closed, even though Plaintiff stands ready, willing, and able to implement identical safety protocols to ensure the health and safety of its employees and patrons. Such disparate treatment for similarly situated businesses has no countenance under the laws and constitutions of the United States and the State of New York.

37.     The closure persists despite the State's own data suggesting that similar businesses are not significant causes of COVID-19 transmission. According to data released by the State in December 2020, 73.84% of COVID-19 cases were traced to household or other social gatherings. *3707 Brewerton Road, LLC v. Cuomo*, No. 007139/2020, slip op. at 16 (N.Y. Sup. Ct. Jan. 15, 2020). Arts and entertainment accounted for just 0.08% of cases and gyms for just 0.06% of cases. (See New York Contact Tracing Data attached as Exhibit B.)


## COUNT I

### Violation of the First and Fourteenth Amendments to the United States Constitution (Freedom of Speech)
### 42 U.S.C. § 1983

38.     Plaintiff incorporates by reference the factual allegations in ¶¶ 1–37.

39.     "Judicial deference in an emergency or crisis does not mean wholesale judicial abdication, especially when important questions of religious discrimination, racial discrimination, *free speech* or the like are raised." *Roman Catholic Diocese of Brooklyn v. Andrew M. Cuomo*, 592 U.S.____(2020). (Kavanaugh, J., concurring).

40.     "The arts have long been recognized to embody expressive speech and are thus protected from governmental overreach by the First Amendment." See, e.g., *Ward v. Rock*

*Against Racism,* 491 U.S. 781, 790 (1989); *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 65 (1985).

41.    The public performance of artistic works represents an Exercise of First Amendment rights.

42.    Yet Defendant, through his executive order, has singled out Plaintiff's speech on the basis of its content. Movie theaters, jazz dinner theaters, churches, SNL, billiards halls, event venues for weddings, casinos, restaurants and bars with live music, bowling alleys, sporting event venues, film houses, museums, aquariums, gyms, and fitness centers are permitted to reopen in New York. But comedy venues are not permitted to reopen.

43.    Defendant's orders are overinclusive with respect to the State's interest in reducing the transmission of COVID-19. The precautions that Plaintiff has proposed— and that museums, SNL, movie theaters, churches, restaurants and bars, jazz theaters, wedding venues and film houses are required to take in New York—are adequate to reduce the risk of transmission.

44.    Defendant's orders are also underinclusive with respect to the State's interest in reducing the transmission of COVID-19. The activities that patrons engage in at these other businesses are similar to the activities that guests engage in at Plaintiff's comedy venues. Compared to Plaintiff's comedy venue, the risk of exposure to COVID-19 is thus similar, if not greater, at businesses that Defendant has permitted to reopen.

45.    Defendant has never publicly justified his discrimination against Plaintiff based on the subject, function or purpose of the speech central to Plaintiff's business.

11

46.     As applied to Plaintiff, the issuance and enforcement of Defendant's orders violate the Free Speech Clause of the First Amendment made applicable to the states by the Fourteenth Amendment.

47.     At all relevant times, Defendant's actions were taken under color of state law.

48.     Plaintiff has no adequate remedy at law for the deprivation of its constitutional rights.

49.     Plaintiff will be irreparably harmed in the absence of declaratory and injunctive relief.


## COUNT II
### Violation of Article I, Section 8, of the New York Constitution
### (Liberty of Speech)

50.     Plaintiff incorporates by reference the factual allegations in ¶¶ 1–37.

51.     The performance of comedy that is the heart of Plaintiff's unique business model constitutes speech within the meaning of Article I, Section 8, of the New York Constitution.

52.     Defendant's aforementioned orders single out Plaintiff's speech on the basis of its content.

53.     Defendant's orders are overinclusive with respect to the State's interest in reducing the transmission of COVID-19 because they prohibit Plaintiff's speech when safety protocols would accomplish the same interest.

54.     Defendant's orders are also underinclusive with respect to the State's interest in reducing the transmission of COVID-19 because they allow speech by other businesses that pose a similar or greater risk of COVID-19 transmission.

12

55.     Defendant has never publicly justified his discrimination against Plaintiff based on the subject, function or purpose of the speech central to Plaintiff's business.

56.     As applied to Plaintiff, the issuance and enforcement of Defendant's orders violate the right to freely speak protected by Article I, Section 8, of the New York Constitution.

57.     Plaintiff has no adequate remedy at law for the deprivation of its constitutional rights.

58.     Plaintiff will be irreparably harmed in the absence of declaratory and injunctive relief.

**COUNT III**
**Fourteenth Amendment to the United States Constitution**
**(Equal Protection of the Laws)**
**42 U.S.C. § 1983**

59.     Plaintiff incorporates by reference the factual allegations in ¶¶ 1–37.

60.     Defendant's orders intentionally treat comedy venues differently from similarly situated businesses. Movie theaters, jazz dinner theaters, churches, SNL, billiards halls, event venues for weddings, casinos, restaurants and bars with live music, bowling alleys, sporting event venues, film houses, museums, aquariums, gyms, and fitness centers are all permitted to reopen in New York under Defendant's orders. The activities at these businesses are similar to the activities at Plaintiff's comedy venues, and they pose similar or greater risks of COVID-19 transmission.

61.     Defendant has never explained his reasons for treating comedy venues differently from movie theaters, jazz dinner theaters, churches, SNL, billiards halls, event venues for weddings, casinos, restaurants and bars with live music, bowling alleys, sporting event venues,

film houses, museums, aquariums, gyms, and fitness centers. There is no rational basis for Defendant's actions.

62.    Defendant's actions in promulgating and enforcing the closure of Plaintiff's venues deprive Plaintiff of the equal protection of the laws guaranteed by the Fourteenth Amendment.

63.    At all relevant times, Defendant's actions were taken under color of state law.

64.    Plaintiff has no adequate remedy at law for the deprivation of its constitutional rights.

65.    Plaintiff will be irreparably harmed in the absence of declaratory and injunctive relief.

## COUNT IV
### Article I, Section 11, of the New York Constitution
### (Equal Protection of the Laws)

66.    Plaintiff incorporates by reference the factual allegations in ¶¶ 1–37.

67.    Defendant's aforementioned orders intentionally treat comedy venues differently from businesses that conduct similar activities and pose similar or greater risks of COVID-19 transmission.

68.    Defendant has never explained his reasons for treating arcades differently from businesses that pose similar COVID-related risks, and there is no rational basis for Defendant's actions.

69.    Defendant's actions in promulgating and enforcing the executive orders requiring the closure of Plaintiff's comedy venues thus deprive Plaintiff of the equal protection of the laws guaranteed by Article I, Section 11, of the New York Constitution.

14

70.     Plaintiff has no adequate remedy at law for the deprivation of its constitutional rights.

71.     Plaintiff will be irreparably harmed in the absence of declaratory and injunctive relief.

## PRAYER FOR RELIEF

Plaintiff respectfully prays that this Court grant the following relief:

1.     A preliminary injunction, followed by a permanent injunction, restraining Defendant from issuing or enforcing any orders closing Plaintiff's comedy venues while any similar business, including a movie theaters, jazz dinner theaters, churches, SNL, billiards halls, event venues for weddings, casinos, restaurants and bars with live music, bowling alleys, sporting event venues, film houses, museums, aquariums, gyms, and fitness centers is permitted to operate, and further restraining Defendant from imposing any health and safety requirements on Plaintiff's comedy venues that are more restrictive than the least restrictive requirements imposed on any similar business, including movie theaters, jazz dinner theaters, churches, SNL, billiards halls, event venues for weddings, casinos, restaurants and bars with live music, bowling alleys, sporting event venues, film houses, museums, aquariums, gyms, and fitness centers; and

2.     A declaratory judgment that (1) Defendant's closure of Plaintiff's comedy venue violates the freedom of speech protected by the First and Fourteenth Amendments to the U.S. Constitution, as applied to Plaintiff; (2) Defendant's closure of

Plaintiff's comedy venues violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution; (3) Defendant's closure of Plaintiff's comedy venues violates the freedom of speech protected by Article I, Section 8, of the New York Constitution; (4) Defendant's closure of Plaintiff's comedy venue denies Plaintiff the equal protection of the laws guaranteed by Article I, Section 11, of the New York Constitution.

3.      An award of costs of this litigation, including reasonable attorney's fees, pursuant to 42 U.S.C. § 1988.

4.      Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by a jury.

Dated: March 1, 2021

**THE MERMIGIS LAW GROUP, P.C.**

___/s/ James Mermigis_____
James G. Mermigis, Esq.
Attorneys for Plaintiff